**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**MARYANN BULLARD,**

          **PLAINTIFF,**

   v.                                              **CIVIL ACTION NO.: 2:05CV269**

**PANASONIC CORPORATION
OF NORTH AMERICA,**

          **DEFENDANT.**

### MEMORANDUM OPINION

Maryann Bullard ("Plaintiff"), proceeding pro se, brings this action, filed on May 4, 2005, against Panasonic Corporation of North America ("Defendant") to redress the following alleged violations of Title VII of the Civil Rights Act of 1964: (1) sexual discrimination arising from Plaintiff's discharge; (2) retaliatory discrimination arising from Plaintiff's discharge; (3) sexual harassment arising from the conduct of co-workers; and (4) disparate treatment arising from Defendant's failure to allow Plaintiff to move to a different cubicle and failure to train her on new software.[1]  (Doc. 1.)

On January 10-11, 2006, the Court conducted a bench trial on this matter.  At the close of Plaintiff's case, Defendant moved the Court to dismiss Claims (1), (3), and (4) on the grounds that

---

[1] While not discussed at trial, Plaintiff also alleged in her Complaint that these offenses violate the Virginia Human Rights Act ("VHRA").  See Pl.'s Compl. and accompanying attachments.  The VHRA "limits private rights of action to employees seeking redress against employers of more than five but less than fifteen employees."  VA. CODE ANN. § 2.2-2639.  Defendant has more than fifteen employees.  Accordingly, the Court held that Plaintiff is not entitled to relief under the act.

Plaintiff's evidence was insufficient to establish a Title VII violation as matter of law. For the reasons set forth below, the Court granted Defendant's Motion with respect to the claims of sexual discrimination and disparate treatment pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, and took Defendant's Motion under advisement with respect to the sexual harassment claim. At the conclusion of trial, the Court found that the two claims remaining before the Court – sexual harassment and retaliatory discharge – did not amount to violations of Title VII. The purpose of this Opinion is to explain in more detail the Court's reasoning.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Defendant sells and services Panasonic and other consumer electronic products and operates a Customer Call Center in Chesapeake, Virginia, which assists customers who have questions or issues relating to these products. From September, 1999, until August 23, 2004, Defendant employed Plaintiff as a customer care representative with the responsibility of fielding incoming calls from customers regarding products and services. Plaintiff was promoted three times and received regular pay raises.

In the course of Plaintiff's employment, Plaintiff filed two formal complaints with Human Resources Manager Marilyn Hamilton-Wold ("Ms. Hamilton-Wold") regarding the conduct of co-workers. Plaintiff filed a complaint of sexual harassment against a lead in Plaintiff's department, Sharon Carlos-Cooke ("Ms. Carlos-Cooke"), upon learning that Ms. Carlos-Cooke was spreading rumors about Plaintiff's sexuality and the non work-related nature of their relationship. Sometime later, Plaintiff logged a separate complaint regarding a conversation she had with co-worker Hal Ogawa ("Mr. Ogawa"), which took place when Mr. Ogawa allegedly confronted Plaintiff in his

---

[2]The factual background of this action is based upon the evidence at trial, including the facts stipulated to by the Parties and contained in the Final Pretrial Order. (Doc. 32.)

office behind closed doors and questioned her about her sexuality.

After the incident involving Ms. Carlos-Cooke, Plaintiff made several informal requests to move to a different cubicle in order to be located away from Ms. Carlos-Cooke. Plaintiff's Manager Dorteo Davis ("Mr. Davis") did not approve Plaintiff's requests; whereas, Defendant had allowed Plaintiff's co-worker Bill Stevenson to change cubicles on the grounds that Stevenson had provided medical justification to be relocated. Frustrated about Mr. Davis' failure to grant her requests, Plaintiff had a conversation with Mr. Davis on August 20, 2005, during which Mr. Davis made remarks to Plaintiff that Plaintiff felt were inappropriate. Plaintiff informed Mr. Davis that Plaintiff was going to file a complaint against him with Ms. Hamilton-Wold on Monday, August 23, 2005.

On August 23, 2004, one of Plaintiff's incoming calls was recorded and reviewed by the Quality Assurance Department. Plaintiff concluded the call by hanging up on the customer. Later that day, Plaintiff attended a meeting with Ms. Hamilton-Wold and Mr. Davis, in which she was informed that she was being discharged from the company.

To pursue her administrative remedies as required by 42 U.S.C. § 2000e-5(b), Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging Title VII violations of unlawful discharge and discrimination arising from Defendant's failure to allow her to move cubicles. See Pl.'s Compl., attachment. Plaintiff's EEOC claims were dismissed on February 2, 2005, after the EEOC determined that "based upon its investigation, the EEOC is unable to conclude that the information obtained established violation of the statutes." Id.

## II. FINDINGS OF FACT

Defendant maintained a Customer First Policy, which provides that "[r]epresentatives should not at any time during a call drop or disconnect the customer. . . ," and further provides that "any employee violating these [practices] will be subject to corrective action, up to and including termination of your employment." Def.'s Ex. 3. Plaintiff signed the Policy and updates on September 9, 1999, October 21, 1999, and August 21, 2002.

On August 23, 2004, Defendant's Quality Assurance Department taped one of Plaintiff's calls as part of a routine audit, during which the customer never cursed Plaintiff or used offensive language. Plaintiff interrupted the customer several times, talked over the customer, and ended the call by hanging up on the customer. During the meeting with Ms. Hamilton-Wold and Mr. Davis, Plaintiff confirmed that the tape recording was of her call.

Plaintiff and Ms. Carlos-Cooke were friends at one time, but their relationship apparently soured when Ms. Carlos-Cooke expressed a desire to engage in a romantic relationship with Plaintiff. At some point later, Plaintiff discovered that Ms. Carlos-Cooke had started a rumor that Plaintiff was bisexual and that they had been romantically involved.

Upon receiving Plaintiff's complaint against Ms. Carlos-Cooke, Ms. Hamilton-Wold immediately investigated the matter and reiterated Defendant's no-harassment policy to Ms. Carlos-Cooke. Ms. Hamilton-Wold told Plaintiff that she had spoken with Ms. Carlos-Cooke and that the gossip would immediately cease. Ms. Carlos-Cooke made no further attempt to contact Plaintiff, and Plaintiff made no further complaint related to Ms. Carlos-Cooke.

Plaintiff and Mr. Ogawa were friends at one time. When Plaintiff was going through divorce and bankruptcy proceedings, Mr. Ogawa gave or loaned her over $1,000.

Upon receiving the Complaint regarding Mr. Ogawa, Ms. Hamilton-Wold immediately

investigated and told Plaintiff that Mr. Ogawa had been directed to stay away from her. Mr. Ogawa made no further attempt to contact Plaintiff, and Plaintiff made no further complaint related to Mr. Ogawa.

Plaintiff never complained to Ms. Hamilton-Wold or any other company manager that Mr. Davis made any derogatory or inappropriate remarks to Plaintiff, nor did Plaintiff ever complain to any supervisory authority that any other employee questioned Plaintiff about her sexuality or made any other inappropriate or offensive remarks to her.

Defendant allowed Bill Stevenson to change cubicles based upon medical documentation submitted by Stevenson's health care provider indicating that Stevenson was hypersensitive to perfumes and certain odors.

### III. MOTION FOR JUDGMENT ON PARTIAL FINDINGS

**A. Standard of Review**

Federal Rule of Civil Procedure 52(c) provides, in pertinent part, that

> [i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the Court may decline to render any judgment until the close of all the evidence.

The Court may grant judgment as a matter of law only "when, without weighing the credibility of witnesses, there can be but one reasonable conclusion as to the correct judgment. If, however, evidence viewed in a light most favorable to the nonmovant indicates that more than one conclusion is plausible, judgment as a matter of law is improper." Siegfried Constr., Inc. v. Gulf Ins. Co., 2000 U.S. App. LEXIS 1304 (4th Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 250-51 (1986)). Judgments entered pursuant to Rule 52(c) must "be supported by findings of fact and conclusions of law as required by subdivision (a) of [the] rule." FED. R. CIV. P. 52(c).

**B. Sufficiency of Plaintiff's Claims**

Plaintiff alleges that Defendant's decision to terminate her employment was motivated by sexual discrimination and that Defendant's failure to approve her request to move to a different cubicle, as well as Defendant's failure to provide Plaintiff opportunity to be trained on new software,[3] constitutes disparate treatment due to her gender. Pl.'s Compl. at 1-3. Considering the evidence in the light most favorable to Plaintiff, the Court FINDS that Plaintiff's claims of sexual discrimination and disparate treatment are not actionable under Title VII.

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals . . . sex." 42 U.S.C. § 2000e-2(a)(1) (2005). No direct evidence exists to support Plaintiff's allegations; thus, in order to establish a Title VII violation based upon circumstantial evidence, Plaintiff's evidence must establish that Defendant engaged in intentional discrimination according to a three-step, burden-shifting method as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Under the McDonnell Douglas-Burdine framework, Plaintiff must first establish a prima

---

[3]This claim was not specified in Plaintiff's Complaint as a basis for violating Title VII. However, it came to the Court's attention for the first time at trial that Plaintiff considered Defendant's failure to provide her adequate opportunities to receive software training as additional evidence of disparate treatment due to her gender. See Pl.'s Compl. and accompanying attachments.

facie case of discrimination. Burdine, 450 U.S. at 256. If Plaintiff is successful, the burden of production, but not proof, shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the action. McDonnell Douglas, 411 U.S. at 802. Finally, the burden shifts back to Plaintiff to prove that the articulated reason is pretextual. Burdine, 450 U.S. at 253-55. The Court will consider the sufficiency of each claim according to this standard.

1. Sexual Discrimination

To establish a prima facie claim of discriminatory enforcement of disciplinary measures arising from Plaintiff's discharge,[4] Plaintiff must show that: (1) that she is a member of a protected class; (2) the prohibited conduct in which he engaged was comparable in seriousness to the misconduct of employees outside the protected class; and (3) similarly situated employees outside the protected class were not discharged." Worster v. United States Postal Serv., 28 Fed. Appx. 324, 327 (4th Cir. 2002) (citing Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993)); see also McDonald v. Sante Fe Trail Transp. Co., 427 U.S. 273, 282-83 (1976) (claimant must prove that similarly situated employees violated rules of "comparable seriousness"). In

---

[4] Where a plaintiff alleges discrimination arising from her discharge on the basis of disciplinary action, some courts have analyzed the claim as both a possible claim for discriminatory discharge and a claim for discriminatory enforcement of disciplinary measures. See Worster v. United States Postal Serv., 132 F. Supp. 2d 397, 406 (M.D.N.C. 2001), aff'd per curiam, 28 Fed. Appx. 324 (4th Cir. 2002); Jones v. Southcorr, L.L.C., 324 F. Supp. 2d 765, 777 (M.D.N.C. 2004). The facts of this case indicate that Plaintiff's primary complaint is that Defendant enforced its customer care policy more severely against Plaintiff than others. Thus, the facts alleged fall squarely within the a claim of discriminatory enforcement of disciplinary measures arising from Plaintiff discharge. See Cook, 988 F.2d at 511-12. If Plaintiff infers discriminatory discharge based on gender, she must establish that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). There are exceptions to element four, where, in appropriate cases, a plaintiff can establish a Title VII violation without establishing that the plaintiff was replaced by someone outside the class. See Miles v. Dell, Inc., 429 F.3d 480, 485-86 (4th Cir. 2005). In this case, however, Plaintiff produced no evidence sufficient to satisfy element four of the prima facie case, nor do the circumstances or evidence in this case invoke any exception or raise any inference of discrimination. Id. at 487-88.

order to demonstrate the second and third element of the test, Plaintiff bears the burden of establishing that other employees that were not discharged were "similarly situated" and violated a rule of "comparable seriousness;" in other words, they hung up on other customers in violation of the customer first policy, but were treated less severely.  Burdine, 450 U.S. at 258; see also Cook, 988 F.2d at 511-12 (Title VII claim not actionable where claimant failed to establish that persons outside protected class were disciplined more severely for violation of company rule that claimant violated).

Although Plaintiff presented evidence that other individuals had been given less severe disciplinary measures, such as warnings, Plaintiff did not introduce evidence indicating what these individuals were being disciplined for or whether they had hung up on any customers.  On the other hand, at least two (2) other customer care representatives – one male and one female – were discharged for hanging up on customers.  Def.'s Exs. 7, 8.  Therefore, Plaintiff's evidence is not sufficient to establish that she was similarly situated to those who received less severe discipline. Moreover, contrary to her assertion in maintaining this claim, Plaintiff's testified under oath that she didn't think that the fact that she is a woman was a motivating factor in her termination. Therefore, the Court FINDS that Plaintiff cannot establish a prima facie claim that she was discharged because of her gender.

    2. Disparate Treatment

To establish a prima facie case of disparate treatment due to her gender, Plaintiff must first establish that (1) she is a member of a protected class; (2) that she suffered adverse employment action; (3) that she was performing her job duties at a level that met Defendant's legitimate expectations at the time of the adverse employment action; and that (4) the adverse employment action occurred under circumstances raising an inference of unlawful discrimination.  Webster v.

Rumsfeld, 2005 U.S. App. LEXIS 26297 (4th Cir. 2005) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc)).

Plaintiff did not present sufficient evidence to establish elements two and four. An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment and focuses "on whether there has been discrimination in such ultimate decisions as hiring, granting leave, discharging, promoting, and compensation." Boone v. Goldin, 178 F.3d 253, 255-56 (4th Cir. 1999); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Whereas, an "[a]ction that merely causes an employee irritation or inconvenience, but does not affect a term, condition, or benefit of her employment, is not an adverse employment action." Spriggs v. Public Serv. Comm'n. of Md., 197 F. Supp. 2d 388, 393 (D. Md. 2002).

Plaintiff testified that she personally and professionally suffered as a result of remaining within proximity of Ms. Carlos-Cooke. Specifically, Plaintiff testified that she was located at a distance of approximately 30 to 40 feet from Ms. Carlos-Cooke, that she was within Carlos-Cooke's eyesight, that Carlos-Cooke sometimes had to stand close to Plaintiff when Carlos-Cooke consulted with a neighboring co-worker, and that Plaintiff suffered headaches and personal discomfort as a result. However, Plaintiff did not introduce evidence that her proximity to Carlos-Cooke affected the terms, conditions or benefits of her employment, nor is there any evidence that any ultimate employment decision was impacted by these events, such as failing to receive a promotion or the like. While the Court makes no finding that Defendant justifiably withheld approval, the Court cannot conclude that these conditions rose to the level of an adverse employment action under the law, particularly where Ms. Carlos-Cooke was not in close proximity to Plaintiff and had no contact with her, other than the possibility that the two might

make eye contact from where they were sitting. Thus, Plaintiff cannot establish element two of the prima facie test – that Plaintiff suffered an adverse employment action.

Nor can Plaintiff establish element four – that Defendant's failure to approve her request raises an inference of unlawful discrimination. As circumstantial evidence that Defendant's failure to allow her to move was motivated by gender discrimination, Plaintiff testified that Bill Stevenson was allowed to move to a different cubicle and argues that the Court should give little, or no, weight to the medical documentation provided as the basis for the decision to allow him to move. However, there is no evidence that the Court should infer any other, or improper, purpose from these events, nor is there any evidence before the Court to raise an inference that Defendant's failure to approve Plaintiff's request was related to her gender.

Plaintiff also claims that she was subjected to disparate treatment due to her gender because Defendant did not provide Plaintiff adequate opportunities to receive training on new software recently implemented by Defendant. Plaintiff testified that Mr. Davis kept asking her to perform other tasks, while virtually all others in the call center were afforded the opportunity to receive training except her. Based upon this testimony alone, there is no evidence before the Court to suggest that the fact that Plaintiff didn't receive this training could be traced to her gender. On the contrary, the evidence before the Court indicates, according to Plaintiff's testimony, that the reason her manager asked her to answer emails was because the company had recently downsized the staff, which caused the company to fall behind. In addition, Plaintiff offered no evidence that failure to be trained on the software adversely affected the terms, conditions or benefits of her employment. So, for these reasons, Plaintiff evidence falls short of establishing a prima facie claim of disparate treatment under Title VII.

### IV. SUFFICIENCY OF REMAINING CLAIMS

After the Court dismissed Plaintiff's claims of sexual discrimination and disparate treatment, the claims remaining before the Court were 1) sexual harassment[5] and 2) retaliatory discharge. Pl.'s Compl. at 1-3 and accompanying attachments. In order to establish a Title VII violation regarding these claims, Plaintiff's evidence must establish that Defendant engaged in intentional discrimination according to the three-step McDonnell Douglass-Burdine framework set forth above. McDonnell Douglas, 411 U.S. 792; Burdine, 450 U.S. 248; see also Williams v. Cerberonics, 871 F.2d 452, 455 (4th Cir. 1989).

**A. Sexual Harassment**

In order to maintain a claim of sexual harassment amounting to a hostile work environment under Title VII, Plaintiff must establish that (1) the conduct of her co-workers was unwelcome; (2) it was based on Plaintiff's gender; (3) it was sufficiently severe or pervasive as to alter the terms and conditions of employment and create an abusive work environment; and (4) the conduct was imputable on some factual basis to Defendant. Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir. 2002).

Plaintiff alleged sexual harassment arising from the following incidents: 1) Ms. Carlos-

---

[5]Defendant argues that Plaintiff's claim of sexual harassment is procedurally barred because it was not specifically contained in Plaintiff's EEOC complaint. It is established that in order to maintain the instant action, Plaintiff must have exhausted her administrative remedies by bringing her charge before the EEOC. See, e.g., Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). According to the Fourth Circuit in Smith,
> [a] plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. See Evans v. Technologies Applications and Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996). If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit. See Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981).

Smith, 202 F.3d at 247; see also Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002) (quoting Chisholm, 665 F.2d at 491) ("'An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.'"). The Court FINDS that the EEOC complaint, and the facts recited therein, are sufficiently related to the facts Plaintiff alleged in asserting the instant sexual harassment claim so that they could be expected to follow from a reasonable administrative investigation and are now properly before the Court.

Cooke starting a rumor about Plaintiff's sexuality; 2) being questioned by other co-workers about her sexuality as a result of the rumor; and 3) being confronted by Mr. Ogawa on or around April, 2004, when Mr. Ogawa pulled her into his office by her arm, closed the door, and questioned her about her sexuality.

While these incidents were clearly unwelcome to Plaintiff and could be considered to be based upon her gender, Plaintiff cannot establish that they were so severe or pervasive as to alter the terms and conditions of her employment or create an abusive work environment. According to the United States Supreme Court in Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001),

> [w]orkplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. Boca Raton, 524 U.S. at 787-88 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)). Hence, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. Boca Raton, 524 U.S. at 788. . . .

Id. at 270-71.

While these instances of harassment were clearly offensive to Plaintiff, their severity is mitigated by the fact that she had non work-related relationships with the two principal people she accuses of misconduct during her employment. While this fact does not give those two people a license to harass her, it does furnish a separate reason for their actions and impacts the severity of what she claims to have been the basis of actionable sexual harassment that should be imputed to Defendant. In addition, Plaintiff produced no evidence that she was unable to perform her job duties as a result of her working environment or that the terms and conditions of her employment

were altered in any way.

As to the pervasiveness of the sexual harassment, the evidence before the Court does not establish that there were more than two isolated incidents, which, considering the lack of severity, is insufficient to establish a Title VII violation. The Fourth Circuit has repeatedly held that not all instances of sexual harassment is actionable since "Title VII was not designed to create a federal remedy for all offensive language and conduct in the workplace." Hartsell v. Duplex Prods., 123 F.3d 766, 772 (4th Cir. 1997) (internal citation and quotation marks omitted). Although Plaintiff testified that other co-workers approached her and questioned her about her sexuality, Plaintiff did not introduce evidence from other witnesses to substantiate her claim. Further, there is no evidence that the complained-of harassment lasted for any length of time or was as widespread as the plaintiff speculates that it might have been. Thus, these isolated instances of harassment, which took place within over four years of employment, were not so severe or pervasive as to rise to the level of a Title VII violation. See Ocheltree v. Scollon Prods., 308 F.3d 351, 359 (4th Cir. 2002); Harris v. Forklift Sys., 510 U.S. 17, 21 (1993).

Additionally, Plaintiff's evidence does not establish that there is any factual basis to impute these incidents to Defendant. In order for Defendant to be imputed with liability for the conduct of coworkers, Defendant must have acquired actual or constructive knowledge of the harassing conduct and have taken inadequate remedial action to correct it. Ocheltree v. Scollon Prods., 335 F.3d 325, 334 (4th Cir. 2003); Spicer v. Virginia, 66 F.3d 705, 711 (4th Cir. 1995). In other words, Defendant should respond promptly and effectively, but if the Court finds that its response resulted in the "cessation of the complained of conduct, liability must cease as well." Spicer, 66 F.3d at 711. Defendant had a policy prohibiting sexual harassment and Plaintiff reported the conduct of Ms. Carlos-Cooke and Mr. Ogawa to Ms. Hamilton-Wold, which the

Court FINDS were prima facie evidence of legitimate claims of sexual harassment requiring action by Defendant. Upon learning of these two events, Defendant took immediate action, and according to Plaintiff's testimony, Ms. Carlos-Cooke and Mr. Ogawa did not engage in any further misconduct directed toward Plaintiff. Thus, not only did Defendant provide a reasonable procedure for victims of harassment to register complaints, but it also took immediate action pursuant to that procedure, and the actions it took were effective. Such steps are clearly adequate to avoid liability under Title VII. Ocheltree, 335 F.3d at 334.

Although Plaintiff complains that other co-workers approached her and questioned her about her sexuality, Plaintiff testified that she did not complain to Ms. Hamilton-Wold or any other superior about this conduct. By failing to do so, Plaintiff cannot seek redress from Defendant since Defendant did not know, and had no reason to know, of any alleged misconduct on the part of other co-workers. This conclusion is underscored by the fact that Defendant had an established procedure for addressing incidents of harassment, Plaintiff was obviously aware of that procedure and availed herself it, Defendant treated all of Plaintiff's prior complaints as legitimate, and had responded promptly and effectively to those complaints. So, for these reasons, Plaintiff cannot establish a violation of Title VII.

**B. Retaliatory Discharge**

To establish a prima facie claim of retaliatory discharge, Plaintiff must show that 1) she engaged in a prior protected activity; 2) that she was discharged; and that 3) a causal connection existed between the prior protected activity and the discharge. Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). Plaintiff alleges that she was discharged in retaliation for filing complaints of sexual harassment against two co-workers, as well as after she notified Mr. Davis of her intent to file charges against him on August 20, 2005. Pl.'s Compl. at 1-3 and as developed at trial.

The Court FINDS that the evidence before the Court does not establish a causal connection between Plaintiff's actual or intended complaints and her discharge; thus, Plaintiff cannot establish element three of the prima facie test. Since Plaintiff attempts to establish a causal connection by circumstantial evidence, Plaintiff must show that Defendant had knowledge of the protected activity and that the temporal proximity between the employer's knowledge of protected activity and the discharge was "very close." Breeden, 532 U.S. at 273; see also Shields v. Fed. Express Corp., 120 Fed. Appx. 956, 962 (4th Cir. 2005).

Plaintiff testified that she logged her complaint against Ms. Carlos-Cooke sometime in February of 2004 and against Mr. Ogawa in March of 2004. Although Ms. Hamilton-Wold testified that Plaintiff logged the complaint against Ms. Carlos-Cooke on September 3, 2003, neither Plaintiff nor Defendant produced any documentary evidence to back up their version of these dates. Therefore, the Court is unable to determine exactly when these complaints took place and has no reason to accept one party's version of the facts over the other. However, even if the Court were to accept the more favorable timeline advanced by Plaintiff, the temporal evidence rebuts Plaintiff's claim that this activity could be considered a motivating factor in her termination, where well over four months lapsed after the last complaint was made and resolved.

On the other hand, the confrontation between Plaintiff and Mr. Davis, which took place on August 20, was close in time to her discharge on August 23. Plaintiff testified that Ms. Hamilton-Wold told her that Mr. Davis attended the meeting in which the decision to discharge Plaintiff was made. However, that evidence is speculative and based on statements which would be hearsay if they were not made by an employee of the Defendant; whereas, before the Court is direct evidentiary testimony that none of the decision makers knew of the events of August 20th. According to Ms. Hamilton-Wold's testimony, Mr. Davis was not present when the decision to

terminate Plaintiff was made, nor did Mr. Davis take part in decisions to terminate employment with respect to any other employee. Thus, the weight of the evidence shows that Defendant did not become aware of Plaintiff's intent to complain against Mr. Davis before the decision to terminate her employment was made. So, for these reasons, Plaintiff's prima facie claim of retaliatory discrimination fails since she has not established a causal connection between the actual or intended complaints and her termination. Breeden, 532 U.S. at 273.

Even if the evidence were sufficient to do so, Defendant has proffered a legitimate, non-discriminatory reason for the discharge – hanging up on a customer in violation of company policy. See McDonnell Douglas, 411 U.S. at 802. Although Plaintiff does not dispute that she hung up on the customer, she maintains that she conducted herself properly throughout the call. However, it is the finding of the Court, based upon the content of the telephone call, that Plaintiff was herself more at fault than the customer in that she repeatedly interrupted and talked over the customer, insisted that the customer was not listening to her, and abruptly ended the call by hanging up on the customer.[6] It is not before the Court to consider whether Plaintiff's conduct during that telephone conversation, including disconnecting it, was an appropriate reason to discharge her. Title VII only requires the to Court to consider whether this proffered reason was legitimate. Whether to consider less severe alternatives is a judgment call, and Defendant is

---

[6]Plaintiff alleged that the tape-recording of her call on August 23, 2005, had been altered by Defendant. Plaintiff offered no evidence of alteration, but speculates that Defendant omitted a portion of the call where Plaintiff gave the customer some kind of a warning. While the existence or nonexistence of Plaintiff having given any warning is immaterial to the merits of this action, the Court FINDS that there is insufficient evidence for the Court to infer that the recording was altered in any way. The Plaintiff was present when the tape was replayed within a matter of a few hours after the call was recorded. Thus, it would have been difficult to alter the tape within that period of time, and the evidence indicates that Plaintiff made no complaint of the tape being altered during that conference. Further, Plaintiff's theory that she gave the customer some type of warning seems to have developed after filing this action. In Plaintiff's Complaint, Plaintiff states that "I was not aware that I did not give the customer a warning. . . . [u]ntil, [sic] I listened to the recording." Thus, the weight of the evidence does not support speculation that the tape was altered.

entitled to exercise its judgment as long as it is not a pretext used to conceal unlawful retaliation. Burdine, 450 U.S. at 255-56; Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004).

In order to demonstrate that Defendant's proffered reason is pretextual, Plaintiff must show that discharging Plaintiff for violating company policy is unworthy of belief and that Defendant was "actually and unlawfully motivated by retaliation in its employment decisions." Newby v. Whitman, 340 F. Supp. 2d 637, 662 (M.D.N.C. 2004). However, Plaintiff produced no evidence indicating that this reason was unworthy of belief or that Defendant was actually attempting to retaliate against Plaintiff for filing her complaints. At all times, Defendant treated Plaintiff's prior complaints as legitimate and took immediate corrective action. Thus, it does not follow that Defendant harbored an unlawful animus against Plaintiff for filing them and used the call of August 23 as an opportunity to seize upon that animus.

This conclusion is underscored by the fact that Plaintiff's conduct during the telephone call was clearly improper and in violation of Defendant's company policy. While Plaintiff maintains the propriety of her actions, in assessing whether the employer's proffered reasons are unworthy of credence, it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff regarding whether the action against her was justified. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000). In such circumstances, the Court cannot substitute its judgment for the Defendant's where no evidence of unlawful motivation exists. So, for the reasons stated, Plaintiff cannot establish a claim of retaliatory discharge under Title VII.

### V. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for a Judgment on Partial Findings with respect to claims of sexual discrimination and disparate treatment, **FINDING** that Defendant is entitled to judgment as a matter of law. As to the claims remaining

before the Court – Plaintiff's claims of sexual harassment and retaliatory discharge – the Court **FINDS** that Plaintiff cannot establish a violation of Title VII. The Court further **FINDS** that Plaintiff is not entitled to relief under the Virginia Human Rights Act. Accordingly, judgment is **GRANTED** to Defendant upon each of the Plaintiff's alleged causes of action contained in her Complaint.

The Clerk is **REQUESTED** to send a copy of this Memorandum Opinion to Plaintiff and all counsel of record.

It is so **ORDERED**.

/s/
*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 2, 2006